[No. 36936. En Banc. October 1, 1964.]

*In the Matter of the* CASE E-368.
GERALDINE ARNETT, *Complainant,* v. SEATTLE GENERAL HOSPITAL, *Respondent,* WASHINGTON STATE BOARD AGAINST DISCRIMINATION, *Appellant.*\*

\*Reported in 395 P. (2d) 503.

*The Attorney General, Morton M. Tytler, Gene Godderis,* and *Herbert Gelman, Assistants,* for appellant.

*Frank M. Preston* and *Thomas D. Kelley,* for respondent.

HUNTER, J.—This is an appeal by the Washington State Board Against Discrimination from a judgment of the superior court modifying an order of the board. The board's order had been entered after a finding that the Seattle General Hospital (respondent) had committed an act of discrimination in violation of the law against discrimination. RCW chapter 49.60.

Geraldine Arnett, the complainant, is of the Negro race. She is a graduate of Franklin High School in Seattle, married, and was 23 years old at the time of this incident. She was desirous of obtaining employment and called the dietary department of the Seattle General Hospital. Miss Werblow, chief dietitian in charge of that department, advised her they were taking applications for the position of tray girl, and if she was in the area to come in and they would be glad to take her application. Pursuant to this conversation, Mrs. Arnett went to the hospital and told a woman in the dietary department of her purpose for coming. The woman went into another room, and Miss Werblow came out to speak to Mrs. Arnett. Miss Werblow told her that she was sorry but there were no openings at the present time; that she expected no openings, and they were not taking applications. Before Mrs. Arnett had an opportunity to say anything in reference to the telephone conversation, Miss Werblow walked away.

Mrs. Arnett left the hospital and immediately went to the home of a friend. The friend called the Seattle General Hospital, asked for the dietary department, and inquired if there were any openings for a tray girl. She was told there may be an opening, and if she was in the area to come down and file an application.

The next day Mrs. Arnett filed a complaint with the State Board Against Discrimination against the Seattle General Hospital and certain supervisory employees for ethnic discrimination by refusing to take her application for employment. After an investigation by a representative of the state board and negotiations for an amicable disposition of her complaint were exhausted, proper notice was given to all parties and a formal hearing was held before the state board.

The board dismissed the supervisory employees named in the complaint on the ground they were acting solely as agents of the Seattle General Hospital.

The board found that although the Seattle General Hospital had no policy concerning racial discrimination, and that Negroes and other non-whites were hired in other departments, the dietary department had not hired a Negro employee during the 12 years that Miss Werblow had been in charge. The board found that Miss Werblow refused to accept complainant's application for employment because of her race or color. It held that the refusal of the hospital to accept the application for employment constituted an unfair practice under the law against discrimination, and that remedial action was necessary to effectuate the purposes and policies of the act. The following is the controverted part of that order:

"It Is Further Ordered that the Seattle General Hospital will accept a written application for employment from Complainant and will offer her employment in the Dietary Department in the first vacancy of a job for which she has applied, provided she meets the standard qualifications of other applicants for employment, but without regard to race, color, creed or national origin; . . ."

The board gave the following reason for entering such an order:

". . . Having found that an unfair act of discrimination has occurred and weighing all other considerations, including the agreed fact that the position of a tray girl is not one requiring unusual skills, we find that we can not tolerate a situation which would leave the decision of the employment of Mrs. Arnett solely in the hands of the party

who has committed the unfair practice. It seems unlikely that Miss Werblow could be entirely fair if granted full rights of discretion, and her past conduct does not create confidence in the impartiality of her judgment even in an ordinary hiring situation. To require the determination to be made by any other person would in itself constitute disparate treatment of Mrs. Arnett's application.

"The people of this state acting through their legislature have recognized and determined that practices of discretion in employment based on race, creed, color or national origin 'are a matter of state concern' that 'menaces the institutions and foundations of a free democratic state.' (RCW 49.60-.010) For this reason the Washington State Board Against Discrimination was created to protect the public interest as well as the interest of individuals. Thus, although we are reluctant to impinge upon Respondent's discretion in business matters, we believe it necessary to make a demand for the employment of Mrs. Arnett at the first available opportunity. This order would not exist excepting for the original misconduct of Respondent which has created a specific discriminatory situation, and the corrective order of the Board is similarly limited in scope."

The hospital appealed to the Superior Court for King County for a review of the order. That court affirmed the board's findings and order, with the exception of the above-quoted paragraph of the order. It was modified as follows:

"IT IS FURTHER ORDERED that Mrs. Arnett will be sent an application, and if it is completed and furnished to the hospital, she, when a vacancy occurs in the position sought, will be given full consideration for the vacant position and the appointment will be made to the best qualified person without any consideration to race, creed, color or national origin."

The trial court gave the following reason in its oral opinion for the modification of the order:

"In this particular case the hospital didn't refuse to hire Mrs. Arnett. If we accept the Findings of Fact they indicate that the hospital refused to take an application for employment. Of course, that would prevent the ultimate hiring or ultimate employment of Mrs. Arnett, but until such time as there was an opening there couldn't be a refusal to hire. . . .

"Certainly refusal to accept application is a bar to sub-

sequent employment. I assume that for purposes of enforcement of the law that one is as serious as another; that refusal to accept an application for employment because of a person's race or color is as serious a breach of the law as refusal to hire for the same reason. . . .

"In my opinion the Tribunal has gone too far in directing the actual employment of Mrs. Arnett. I feel that the most they should have done is to have made an order substantially similar to that proposed by Mr. Preston. That would require them to accept an application and to consider it fairly and honestly and sincerely without any regard to matters of race, creed, color, religion, or things of that kind. Such an order would correct the situation here that is complained of, and would assure Mrs. Arnett of fair treatment. That is the thing the law assures her; that is the thing the Tribunal and the Court should assure her.

"The Tribunal in this preamble makes it clear that they fear her application can't be and wouldn't be fairly and honestly considered. And they dispute perhaps that it would be difficult for Mrs. Werblow to act impartially in considering such an application. But I don't believe they are justified in taking such a pessimistic view of the situation. I think there is no reason to feel that such an application wouldn't be given fair consideration."

In this case there is no dispute in the facts and the conclusion that an unfair practice was committed. This was finally adjudicated in the trial court and no appeal was taken from that portion of the decree. Neither is there any question concerning the skill or ability of the applicant, and we do not decide whether the board would have had the power to enter this type of order if any unusual talents were necessary for the position sought. The order of the board in this case provided that Mrs. Arnett be hired only if she meets the standard qualifications for such a position.

We find it necessary to consider first whether or not the board had the power to order the hospital to employ the complainant upon the occurrence of the first vacancy, if she was otherwise qualified.

In RCW 49.60.010, "Purpose of chapter," is the following language:

" . . . It is an exercise of the police power of the state for the protection of the public welfare, health and peace

of the people of this state, and in fulfilment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, or national origin are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. A state agency is herein created *with powers with respect to elimination and prevention of discrimination in employment,* in places of public resort, accommodation or amusement, and in publicly assisted housing because of race, creed, color, or national origin; *and the board established hereunder is hereby given general jurisdiction and power for such purposes.*" (Italics ours.)

The remedies for carrying out the purpose of the chapter are delineated in RCW 49.60.250:

" . . .

"If, upon all the evidence, the tribunal finds that the respondent has engaged in any unfair practice it shall state its findings of fact and shall issue and file with the board and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair practice and *to take such affirmative action, including,* (but not limited to) *hiring,* reinstatement or upgrading of employees, with or without back pay, an admission or restoration to full membership rights in any respondent organization, *or to take such other action as, in the judgment of the tribunal, will effectuate the purposes of this chapter,* and including a requirement for report of the matter on compliance. . . ." (Italics ours.)

▮ It is clear from the above statutes that when an employer has engaged in an unfair practice as defined by the act, the enforcement provisions of RCW 49.60.250 are available to the board to remedy the violation.

The respondent contends that the purpose of the hearing was solely to adjudicate whether Mrs. Arnett had a right to be given an application. We disagree. The purpose of the hearing was to determine if an unfair practice had occurred, and, if so, what action should be taken. The board is vested with broad discretion, and it has the duty to determine what remedy is required in a specific situation to

carry out the declared policy of the act. Here the board, in its judgment, did not believe that further discrimination against Mrs. Arnett would be prevented by merely requiring that Miss Werblow accept her application and give it fair consideration for her employment. Miss Werblow had discriminated before and it was reasonable for the board to conclude that when lodged with full discretionary power discrimination would likely occur again. The board was not required to run this risk in effectuating the purpose of the act. It was within its discretion to require hiring, or to take such other action as in the judgment of the tribunal would effectuate the purpose of the act.

The remedies found in the National Labor Relations Act for an unfair labor practice (29 U.S.C. 160(c)) are very similar to the provisions in our law against discrimination. In *Phelps Dodge Corp. v. National Labor Relations Bd.*, 313 U. S. 177, 85 L. Ed. 1271, 61 S. Ct. 845, 133 A.L.R. 1217 (1941), the United States Supreme Court considered an analogous situation involving the National Labor Relations Act. An employer violated the act by refusing to hire solely because of union affiliation. The issue decided by the court was whether the board was empowered to order the employer to undo the wrong by offering the men discriminated against the opportunity for employment which should not have been denied them. The court said:

"Reinstatement is the conventional correction for discriminatory discharges. Experience having demonstrated that discrimination in hiring is twin to discrimination in firing, it would indeed be surprising if Congress gave a remedy for the one which it denied for the other. . . . It could not be seriously denied that to require discrimination in hiring or firing to be 'neutralized,' [citation omitted] by requiring the discrimination to cease not abstractly but in the concrete victimizing instances, is an 'affirmative action' which 'will effectuate the policies of this Act.' . . . Attainment of a great national policy through expert administration in collaboration with limited judicial review must not be confined within narrow canons for equitable relief deemed suitable by chancellors in ordinary private controversies. . . ."

This is an even stronger case than the *Phelps* case. RCW 49.60.250 specifically refers to hiring, while the National Labor Relations Act does not have such a proviso. In the *Phelps* case the court relied on the general power given to effectuate the purpose of the act, which provision is common to both the National Labor Relations Act and the law against discrimination. We hold that under our statute, the board had authority to enter the order that it did.

The remaining issue is whether or not the trial court properly changed the order of the board. The relation of remedy to policy is peculiarly a matter for administrative competence, and the rule is that courts must not enter the allowable area of the board's discretion. It is the well-established law in this state, as well as in other jurisdictions, that modifications of administrative orders by a court of review are limited to acts that are arbitrary or capricious, or where the tribunal proceeded on a fundamentally wrong basis, or beyond its power under the statute. The general rule is well stated in 2 Am. Jur. (2d), Administrative Law § 672:

"Administrative agencies have considerable latitude to shape their remedies within the scope of their statutory authority, especially where a statute expressly authorizes the agency to require that such action be taken as will effectuate the purposes of the act being administered. The relation of remedy to policy is peculiarly one for the administrative agency and its special competence, at least the agency has the primary function in this regard. In particular cases, it is held that the fashioning of the remedy or the propriety of the order is a matter for the administrative agency and not for the court; that the courts may not lightly disturb the agency's choice of remedies; that the order should not be overturned in the absence of a patent abuse of discretion or a showing that it is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the statute; or that the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist, or is unwarranted in law or without justification in fact. Where there is a sufficient basis for the orders issued it is no concern of the court that other regulatory devices might be more appropriate, or that less extensive measures

might suffice. Such matters are the province of the legislature and of the administrative agency. . . ."

See *Whatcom Cy. v. Langlie,* 40 Wn. (2d) 855, 246 P. (2d) 836 (1952); *Morgan v. Department of Social Sec.,* 14 Wn. (2d) 156, 127 P. (2d) 686 (1942); *Sweitzer v. Industrial Ins. Comm.,* 116 Wash. 398, 199 Pac. 724 (1921).

The reasoning of the trial judge in his oral opinion modifying the tribunal order was not based on the ground that the tribunal exceeded its statutory power, or that the board's action was arbitrary or capricious, but the order was modified solely because the trial judge disagreed with the judgment exercised by the tribunal as to the necessary action to be taken in this case to effectuate the policy against further discrimination. The trial judge substituted his judgment for that of the tribunal and, in so doing, acted beyond his power.

■ The respondent further argues that the order entered by the board was in violation of Const. Art. 1, §§ 3 and 7. This issue was not raised in the trial court and cannot be raised for the first time on this appeal. *Metcalf v. Metcalf,* 57 Wn. (2d) 612, 358 P. (2d) 983 (1961).

The judgment of the trial court modifying the tribunal order is reversed, and the cause is remanded with directions that the tribunal order be reinstated.

FINLEY, ROSELLINI, and HALE, JJ., concur.

HILL and HAMILTON, JJ., concur in the result.

OTT, C. J. (dissenting)—This appeal presents a limited issue. The Washington State Board Against Discrimination, after hearing all the evidence in the cause in which Geraldine Arnett was the complainant, entered the following order:

"IT IS FURTHER ORDERED that the Seattle General Hospital will accept a written application for employment from Complainant and will offer her employment in the Dietary Department in the first vacancy of a job for which she has applied, provided she meets the standard qualifications of other applicants for employment, but without regard to race, color, creed or national origin; . . ."

The trial court modified this portion of the order to read as follows:

" 'IT IS FURTHER ORDERED that Mrs. Arnett will be sent an application, and if it is completed and furnished to the hospital, she, when a vacancy occurs in the position sought, will be given full consideration for the vacant position and the appointment will be made to the best qualified person without any consideration to race, creed, color or national origin.' "

The sole issue on appeal is the legality of the modification. The majority reverse the trial court and reinstate the order of the board. I do not agree.

In my opinion, to direct the employment of a *specific* person, provided she meets *standard qualifications,* instead of permiting an employer to hire "the best qualified person without any consideration to race, creed, color or national origin," *is in itself discriminatory.*

The purpose of the law against discrimination is to eliminate racial prejudice and establish equality among all persons seeking the same employment, to the end that the *most qualified* person will be employed, whether Caucasian or nonCaucasian. Such an interpretation meets constitutional requirements.

To construe the word "hiring," in RCW 49.60.250, as authorizing the board to direct the employer to hire *a particular person* is clearly violative of the equal protection provisions of our state and federal constitutions.

We have said that, when two interpretations can be given a statute, one of which is constitutional and the other unconstitutional, we must adopt the constitutional construction. *Yelle v. Bishop,* 55 Wn. (2d) 286, 303, 347 P. (2d) 1081 (1959), and cases cited; *State v. Twitchell,* 61 Wn. (2d) 403, 411, 378 P. (2d) 444 (1963).

The trial court did not err in modifying the order of the board in this respect.

The board and the majority order that Mrs. Arnett be employed when a vacancy occurs, concluding that the hospital cannot *now* be trusted to act fairly and impartially upon her application.

This conclusion is not sustained by the record. The presumption is that people are honest. It is elementary that one who asserts dishonesty has the burden of establishing it by a fair preponderance of the evidence.

The facts established that the hospital attendant who answered the telephone advised Mrs. Arnett that applications were being accepted. Fifteen minutes later, at 11:15 a. m., Mrs. Arnett appeared to file her application. Miss Werblow was called from her work of supervising the Dietary Department employees, then engaged in the preparation and service of the noon luncheon to the patients. She refused to accept an application *at that time* because there was presently no vacancy. This conduct could be said to be discriminatory, if the application was refused simply because Mrs. Arnett was a Negro. This was not the case. Miss Werblow testified that she had no personal prejudice against Negroes, and that, had Mrs. Arnett advised her that she had been told that applications were being accepted, she would have given her one. Her testimony in this regard is as follows:

"Q. Had she asked you for an application would you have given her one? A. Well, I did tell her, apparently, that I had no openings, which we did not have, but I did not know she had been the person that had called in and told she might come in and fill out an application, and I would certainly not send someone away that I knew had made a special trip in to fill out an application, but many we did turn away because we do not or did not need applications at that time. Q. In other words, had you known that she had called in and had been told to come down and fill out an application, would you have given her an application? A. Yes, I am sure I would have."

How soon a vacancy in employment might occur was not known. Miss Werblow testified that, during her 11 years as supervisor, she had had occasion to recommend only 9 persons for permanent employment in the Dietary Department.

Before the hospital authorities were aware that the board contended a technical violation of the unfair practices act was thus accomplished, the board's investigator came to

the hospital and was given two application forms, neither of which was ever completed or returned to the hospital by Mrs. Arnett or by anyone in her behalf.

At the hearing before the board, the good faith of the hospital authorities was further established by their offer of an application blank to Mrs. Arnett with the assurance that, if and when a vacancy occurred, her application, if filed, would receive equal and fair consideration with those of other applicants.

The Seattle General Hospital employs 30 Negroes (more than 18 per cent of its 165 full-time employees), one of whom served satisfactorily as relief help in the Dietary Department. In addition, the hospital employs 15 other nonCaucasians. There is no evidence in this record that any comparable hospital in the state of Washington or in the United States has a higher percentage of nonCaucasian employees. In addition, the evidence *affirmatively* establishes that Mrs. Arnett's application, if presented, will be fairly and impartially considered in the event of a vacancy.

Certainly, under these facts, dishonesty on the part of the hospital authorities cannot be presumed by the majority of this court. Until such time as the hospital authorities have had an opportunity to pass upon Mrs. Arnett's application, *if she elects to file one,* no question of discrimination is presented.

Finally, the majority state:

" . . . It is the well-established law in this state, as well as in other jurisdictions, that modifications of administrative orders by a court of review are limited to acts that are arbitrary or capricious . . .

" . . .

" . . . The trial judge substituted his judgment for that of the tribunal and, in so doing, acted beyond his power."

Again, I do not agree. The law against discrimination expressly grants to the trial court the *exclusive jurisdiction to modify or set aside in whole or in part* an order of the Washington State Board Against Discrimination. RCW 49.60.270 provides in part:

"Any respondent or complainant aggrieved by a final order of a hearing tribunal may obtain a review of such order in the superior court  .  .  .  . Upon such filing the court shall proceed in the same manner as in the case of a petition by the board and shall have the same exclusive jurisdiction to grant to any party such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed.  .  .  ."

In the instant case, the trial court, in the proper exercise of its authority granted by the act, modified the decree of the board by directing the hospital to give full consideration to Mrs. Arnett's application for employment when a vacancy occurs, and to appoint *"the best qualified person without any consideration to race, creed, color or national origin."* (Italics mine.)

This court, in its review, should not substitute its judgment for that of the trial court, particularly when the legislature has specifically granted to the superior court "exclusive jurisdiction" to modify an order of the board.

For the reasons stated, the judgment of the trial court should be affirmed.

DONWORTH and WEAVER, JJ., concur with OTT, C. J.