[No. 46853. En Banc. September 18, 1980.]

RICHARD ROSE, *Appellant,* v. HANNA
MINING COMPANY, *Respondent.*

BRACHTENBACH, J.—Defendant operates a ferro–silicon smelter plant. Plaintiff applied for a job as a laborer.

The plaintiff was denied employment solely because he was afflicted with the condition of epilepsy in some degree. In a summary judgment order, the trial court found complete freedom from epilepsy to be a bona fide occupational qualification (BFOQ) for working as a laborer in the defendant's smelter under the state statute prohibiting discrimination in employment. RCW 49.60.180. There are genuine issues as to material facts which preclude a summary judgment. We remand for further proceedings consistent with this opinion.

The position of laborer for which plaintiff applied involves 12 specific tasks. The work area is extremely hazardous, involving working around molten metal with a temperature as high as 3,240 degrees Fahrenheit. Among other dangerous functions, the laborer must climb ladders directly above semi–molten material at a temperature as high as 1,600 degrees Fahrenheit. He must also operate an overhead crane to pour molten metal into molds.

During a required preemployment physical examination by the company–approved physician, Rose informed the physician that he had a condition of epilepsy controlled by daily medication. Defendant denies that the condition was adequately controlled by medication. According to a written company policy, all applicants with a history of "convulsive disorders", except those applying for office positions, were to be disapproved. Another policy, apparently directed to the examining physician, stated: "Any of

the following list of defects should be considered as a bar to employment of new applicants." There follows a list of 19 "defects" (this is defendant's word, not ours) including "epileptic." Rose was therefore denied employment. He met all of the other qualifications.

Rose has experienced three grand mal seizures during his life, the last occurring 7 years ago during what is described as a traumatic divorce. With the grand mal seizures allegedly now controlled by medication, Rose occasionally experiences lesser seizures which, in his case, involve rapid eye blinking and nausea. He does not stumble or fall and his skeletal muscles do not convulse. His activities are slowed down for a few moments, but not interrupted. Only those who know him well are aware of it when he has a seizure. The seizures are preceded by a warning or aura that is long enough and prominent enough to allow him to change his position before the seizure occurs.

From 1965 to 1967, Rose worked as a laborer at the Rock Island Smelter, then owned by a different company, and performed many different jobs without apparent difficulty. Since that time, the smelter was acquired by Hanna. Apparently the production process is essentially the same now as under the prior operation.

Rose originally filed a claim of discrimination with the Washington State Human Rights Commission in 1975. In 1978, he stayed those proceedings and filed this lawsuit, electing a judicial remedy rather than administrative remedy, as is his prerogative under the statute. His complaint alleged a discrimination in violation of RCW 49.60.180, which provides:

> It is an unfair practice for any employer:
> (1) To refuse to hire any person because of such person's age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical handicap, unless based upon a bona fide occupational qualification: *Provided,* That the prohibition against discrimination because of such handicap shall not apply if the particular disability prevents the proper performance of the particular worker involved.

In its answer, the defendant asserted that its requirement of complete freedom from epilepsy is a bona fide occupational qualification (BFOQ) for the position of laborer at the smelter. The defendant moved for summary judgment, arguing that (1) the BFOQ is valid and a sufficient basis for decision or, in the alternative, (2) there is no reasonable accommodation that the defendant could make to employ the plaintiff. WAC 162–22–080(1).

In response, the plaintiff moved for partial summary judgment that the defendant was liable under the statute, reserving the amount of damages for trial.

By deposition and affidavit the parties presented testimony describing the working conditions and the individual tasks at the smelter. They also presented the testimony of three physicians regarding epilepsy in general, Rose's particular condition, and the danger presented by Rose working as a laborer at the smelter. Hanna's examining physician, who had not been in the smelter prior to the examination, testified that "every epileptic" was unsuitable for working as a general laborer at the smelter and, because in Rose's case there was an ever–present possibility that he might lose awareness and at times consciousness for a brief period, that Rose could not safely perform the job of laborer. The physician did visit the plant before his deposition.

The physician who testified for Rose, a specialist in epilepsy, disagreed. After studying Rose's condition and observing each task performed at the smelter, he concluded that the working conditions would not tend to precipitate a seizure and that, because Rose has a warning before each seizure and does not have involuntary motor activity, Rose's condition would not present a significant danger to himself or to others in the performance of any task, except for operating the overhead crane.

The trial court ruled in favor of the defendant. The court specifically concluded "that freedom from a current condition of epilepsy is a bona fide occupational qualification for the position of laborer at Hanna Mining Company." The

plaintiff's appeal was certified to this court by Division Three of the Court of Appeals.

The first issue concerns the validity of freedom from epilepsy as a bona fide occupational qualification. The legislature has offered no standards for evaluating the validity of a BFOQ. The regulations simply state:

> (2) The term "bona fide occupational qualification" has not been defined by the legislature. Its meaning must be worked out through experience in administering the law and with reference to the general purposes of the law against discrimination and other expressions of public policy.

WAC 162-16-020(2).

The Human Rights Commission suggests a narrow interpretation or application of a BFOQ. WAC 162-16-130.

We necessarily start with the premise that employment can be refused on the basis of the presence of any sensory, mental or physical handicap if the decision is based on a bona fide occupational qualification. That is the express language of RCW 49.60.180. Thus a valid BFOQ applies to *all* persons with the handicap, even though the particular applicant in fact could perform the job. The proviso of RCW 49.60.180, on the other hand, is an individualized matter, *i.e.,* the prohibition against discrimination is not applicable if the *particular* disability prevents the proper performance of the *particular* worker.

This differentiation is recognized in the regulations.

> (3) A bona fide occupational qualification differs from the statutory requirement that the handicapped individual be able to properly perform the job. The determination of ability to do the job is made on an individual basis, for each person for each job. A bona fide occupational qualification is a requirement that must be met by all persons whether or not they can do the job. Ability to do the job is part of the definition of handicap discrimination; a bona fide occupational qualification is an exception to the rule of non-discrimination because of handicap.

WAC 162-22-070(3).

The purpose behind the provision allowing for the establishment of occupational qualifications appears to be two-fold. First, it informs the potential applicant at the outset of the minimum physical capabilities that he or she should possess before expending any time or effort on the application process. Second, it relieves the employer of the burden of testing the capabilities of every applicant individually by allowing it to summarily reject those applicants who clearly do not meet the minimum criteria. This process of summary screening by the employer or self–screening by the potential applicant saves time and effort for both the employer and the applicants.

To assure that these criteria do not discriminate against applicants who could properly perform the work despite a handicap, the bona fide occupational qualifications must be narrowly drafted to describe the very minimum required. That is not to say that the employer must prove that *no* applicant who fails to meet the qualifications would be able to perform the work; that would be an impossible burden of proof. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 378, 610 P.2d 857 (1980). Rather, the employer must show that "'all or *substantially* all'" persons who do not possess the qualifications would not be able to perform the work safely and efficiently within the limits of reasonable accommodation. *Fahn*, at 381 (italics ours), quoting *Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228, 235 (5th Cir. 1969).

 This brings us to a burden of proof question and the posture of this particular case. We agree with the analysis of the Court of Appeals in *Kimmel v. Crowley Maritime Corp.*, 23 Wn. App. 78, 596 P.2d 1069 (1979), that it was the plaintiff's burden to establish a prima facie case of handicap discrimination. The plaintiff did that by defendant's admission that the sole reason for not hiring was his condition of epilepsy. The burden then shifted to the

defendant to articulate some nondiscriminatory reason for not hiring.

■ The difficulty with this record is that the initial defense was that the defendant had adopted a BFOQ which plaintiff could not meet. But the affidavits and depositions largely focused on this particular plaintiff's condition and abilities. The burden had shifted to the defendant to prove that all or substantially all epileptics could not properly perform the work involved. One doctor, without proof of any expertise in this field, would disqualify 100 percent of epileptics. An expert in the field stated that this plaintiff could perform safely over 90 percent of the tasks involved.

The formulation and application of a valid BFOQ should not rest upon such tenuous grounds. This is a matter of serious social and economic consequences. *Holland v. Boeing Co.*, 90 Wn.2d 384, 388, 583 P.2d 621 (1978). There is a genuine issue as to material facts. Summary judgment was not proper.

The parties rather obliquely address the requirement that an employer make reasonable accommodations to the handicap of an employee unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business. WAC 162-22-080(1). *Holland v. Boeing Co., supra* at 389. Except for the conclusion by the plaintiff's expert that the plaintiff was capable of performing 11 of the 12 tasks involved, the record is devoid of any evidence on this question. There is nothing before us on this record as to this pivotal question which would permit us to make a reasoned judgment and fashion standards.

■ Finally, the plaintiff raises a question regarding the availability of attorneys' fees. The plaintiff is entitled to attorneys' fees only if his claim under the act is meritorious. *Sarruf v. Miller,* 90 Wn.2d 880, 885, 586 P.2d 466 (1978). That has not yet been decided.

314

The summary judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.