[No. 41937.    En Banc.    October 7, 1971.]

DUPONT-FORT LEWIS SCHOOL DISTRICT No. 7, *Appellant*, v. LOUIS BRUNO *et al.*, *Respondents*.

*James E. Duree*, for appellant.

*Slade Gorton, Attorney General*, and *Gerald L. Coe, Assistant*, for respondents.

STAFFORD, J.—In June of 1969, DuPont-Fort Lewis School District No. 7, a grade school district, applied to the Wash-

ington State Board of Education for *approval* and *accreditation* of a high school program for grades 10, 11 and 12. The application was denied July 8, 1969 and the district was immediately notified.

In April of 1970 the Washington State Superintendent of Public Instruction notified the district that, based upon the state board's refusal of *approval* and *accreditation*, effective July 1, 1970, he could no longer provide state funds to operate the program in grades 10, 11 and 12.[1]

On December 22, 1970, approximately 1½ years after the state board's denial of *approval* and *accreditation*, the district obtained a writ of certiorari directed to the state board and to the state superintendent. It alleged that the state board and the state superintendent had acted "illegally, arbitrarily, capriciously, in excess of their jurisdiction, fraudulently, in bad faith and have discriminated against the students . . . and . . . taxpayers of the DuPont-Fort Lewis School District No. 7." The district appeals from the trial court's subsequent order of dismissal.

This case has had a long, tortuous history that includes a prior appeal. *State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno*, 62 Wn.2d 790, 384 P.2d 608 (1963). That case involved almost identical facts in which the district applied for *accreditation* of grades 10 and 11 with grade 12 to be added September 10, 1963. The state board denied *accreditation* and the district applied to the superior court for a writ of certiorari, seeking thereby to obtain judicial review of the board's action. In that case, as in this, it was asserted that the state superintendent and the state board had acted illegally, arbitrarily and capriciously. The superior court issued an alternative writ of certiorari and thereafter dismissed it.

On appeal we agreed that the trial court had properly declined jurisdiction. We held that RCW 43.63.140 did not limit the state board's examination, for *accreditation* pur-

---

[1] RCW 28A.41.130, enacted in 1965, requires *approval* by the state board as a prerequisite for participation in a certain portion of the common school funds.

poses, to a mere ministerial determination of whether a high school meets certain academic, personnel, attendance, and facility standards. We stated that the legislature intended the state board's consideration of the application to be in terms of such standards "together with an over-all evaluation of such factors as necessity, economic effect, and future planning." We held further that a school district is not entitled, as a matter of substantive right, to *accreditation* of a projected high school irrespective of such considerations.

Despite the state board's denial of *accreditation*, notwithstanding the trial court's order of dismissal and despite the fact that the matter was then on appeal, the district *accelerated* implementation of its projected high school plans. The full program, including grade 12, was instituted on June 10, 1963. Thereafter, the district continued to operate the high school in the face of an adverse opinion rendered by this court on August 15, 1963.[2]

The district unsuccessfully applied for high school *accreditation* in June of 1967, but sought no review thereof. In May of 1968, the district applied unsuccessfully for *accreditation* as well as for state board *approval*. Again, it did not seek a review.

In 1969 the grade school district's high school program still lacked either *approval* or *accreditation* by the state board. The program had been neither officially authorized nor recognized.[3] In June of 1969 the district made an application out of which the current action arises. *Approval* and *accreditation* were again denied on grounds substantially the same as those stated in 1963. The state board held in effect that there had been no change since 1963 when the board found that:

[2]*State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963).

[3]Laws of 1963, ch. 32, § 1 amended RCW 43.63.140. The significant change in RCW 43.63.140 (now codified as RCW 28A.04.120) is contained in section (5) which now gives the state board power to grant or deny *approval* of the establishment, by an existing nonhigh school district of any new secondary program or any new grades in grades 9 through 12.

No dire and imperative need presently exists for high school facilities and program of secondary education in the DuPont-Fort Lewis School District No. 7.

Adequate high school facilities exist in Clover Park School District No. 400, and additional facilities and programs may be more economically and reasonably provided within the boundaries of the Clover Park School District.

The expenditure of federal and state funds for construction and operation of a senior high school in the DuPont-Fort Lewis School District No. 7 is unreasonable and not in the public interest.

The district contends that the state board should have given greater weight to the report and recommendations of the state superintendent's staff. It is urged that the staff recommendations were ignored.

First, it should be noted that the staff's report was not wholly favorable to the district's position. In fact, it actually contained several caveats. Second, the staff made an alternative recommendation contrary to the district's position. Finally, "staff recommendations" are exactly that— they are *recommendations* and are advisory only.

Nevertheless, a review of the state board's minutes indicates the staff report was not ignored. The staff's findings of fiscal responsibility were seriously questioned and were found wanting.

■ The state board's action was not arbitrary and capricious. Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955); *In re Buffelen Lumber & Mfg. Co.,* 32 Wn.2d 205, 201 P.2d 194 (1948).

Nothing will be gained by a review of *State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963), or the cases cited therein. That case

and the legal holdings therein are determinative of the instant action. The same basic complaint is raised by the district's current challenge of the board's denial of *accreditation and approval*. The same "non-academic" reasons for denial are asserted by the state board. The previous *DuPont* case resolved those matters against the district.

*Accreditation and approval* by the state board, in addition to being a recognition of academic proficiency, is also a qualification for participation in a certain proportion of the common school fund. When a district expands, state and state-administered federal funds become potentially involved. The state must exercise both fiscal and academic responsibility in this area. Thus, a school district is not entitled, as a matter of substantive right, to *accreditation* or *approval* irrespective of considerations which include an overall evaluation of the necessity, economic effect and future planning of the entire interrelated school system.

The judgment of dismissal is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, SHARP, and WRIGHT, JJ., concur.