[No. 44892. En Banc. November 30, 1978.]

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
AFL–CIO, LOCAL 469, *Appellant,* v.
THE CITY OF YAKIMA, ET AL,
*Respondents.*

*Critchlow, Williams, Ryals & Schuster,* by *David E. Williams* and *Michael E. de Grasse,* for appellant.

*Fred H. Andrews, City Attorney,* and *Wesley M. Wilson,* for respondents.

HAMILTON, J.—Local Union No. 469, International Association of Firefighters, AFL–CIO (union), appeals a judgment affirming a Department of Labor and Industries decision.[1] The department reversed the order of a labor mediator and excluded fire department battalion chiefs from the statutorily defined class of "public employees". We find these battalion chiefs are public employees and reverse the trial court.

This action comes to us after extensive administrative proceedings. In 1969, the Department of Labor and Industries, acting pursuant to the Public Employees' Collective Bargaining Act, RCW 41.56, certified the union as bargaining agent for all City of Yakima firefighters except the chief. Later, the union entered into an agreement with the City of Yakima excluding battalion chiefs from the bargaining unit. In 1973, however, the union petitioned the Department of Labor and Industries to restore battalion chiefs to the bargaining unit. A mediator was appointed and a hearing held. After finding that battalion chiefs did not have actual authority to hire, transfer, or discharge other employees and further, did not appear to actively participate to any great extent in the day–to–day formation and execution of labor and manpower policy, the battalion chiefs were held to be public employees and thus the mediator included them in the bargaining unit.

The City of Yakima appealed to the Director of the Department of Labor and Industries for review of the

---

[1]Prior to 1975, RCW 41.56.060–.080 conferred upon the Director of the Department of Labor and Industries the authority and duty to certify bargaining units. By the Laws of 1975, 1st Ex. Sess., ch. 196, § 1, p. 1327, that authority and duty was transferred to the Public Employment Relations Commission (PERC), which has not participated in this case.

mediator's decision. The director reversed the mediator, finding the evidence indicated battalion chiefs did possess several supervisory responsibilities, including summary suspension authority. The director held that the supervisory authority of battalion chiefs suggested they were situated in a confidential relationship to the executive head of the bargaining unit and should be excluded from the statutory definition of public employees. Thus, he excluded battalion chiefs from the bargaining unit.

Pursuant to RCW 34.04.130, the union then filed for judicial review of the director's decision in superior court. The parties waived oral argument and the court considered the issue on the basis of the record. The court affirmed the director finding that, while battalion chiefs were in fact without the actual authority to hire or fire, they possessed several other supervisory powers and therefore stood in a confidential relationship to the executive head of the bargaining unit—the fire chief. Alleging the court improperly construed the Public Employees' Collective Bargaining Act, the union sought review of the court's decision.

The central issue with which we are concerned is: Are the battalion chiefs public employees under RCW 41.56.030(2)? If, by reason of their duties, they are not within the statutory definition of public employees, the director's exclusion of battalion chiefs from the definition of public employees and thus from coverage under the act was correct.

The law, which defines a public employee for purposes of the Public Employees' Collective Bargaining Act, provides:

> (2) "Public employee" means any employee of a public employer except any person (a) elected by popular vote, or (b) appointed to office pursuant to statute, . . . or (c) *whose duties as deputy, administrative assistant or secretary necessarily imply a confidential relationship to the executive head or body of the applicable bargaining unit,* or any person elected by popular vote or appointed to office pursuant to statute, ordinance or resolution for a specified term of office by the executive head or body of the public employer.

(Italics ours.) RCW 41.56.030.

We stated in *Municipality of Metropolitan Seattle v. Department of Labor & Indus.*, 88 Wn.2d 925, 928, 568 P.2d 775 (1977) (hereafter (*Metro*):

> Unless the positions involved fall within one of these categories [deputy, administrative assistant, or secretary], the persons holding them are not excluded from the definition of "public employee" under the act. Furthermore, even if they fit one or more of the categories named in the statute, the persons holding them are nevertheless public employees if their duties do not *necessarily* imply a confidential relationship . . .

In *Metro*, we refused to accept the argument that the Washington State Legislature simply adopted federal criteria for determining which employees should be permitted to bargain collectively. The Labor Management Relations Act of 1947 (29 U.S.C. § 152(3) (1970)) expressly *excludes* supervisory personnel from its definition of the term employees. Our legislature excluded *only* certain deputies, administrative assistants, and secretaries. This difference evidences rejection of the federal supervisory exclusion. Thus, under our statute the mere presence of supervisory responsibility is insufficient to warrant exclusion from the definition of public employees.

Moreover, in *Metro* we observed that rejection of the federal supervisory exclusion evidenced a legislative differentiation between the *public employee* covered by our statute on the one hand, and the *private industrial employee* covered by the Labor Management Relations Act on the other hand. We were of the opinion that the nature of the trust with which public officials are charged led to a legislative judgment that officials should have freedom not only to control, hire, or fire confidential employees, but also to work with the confidential employees unrestrained by collective bargaining.

The peculiar facts of *Metro* made it unnecessary in that case to describe the duties of those employees. Thus, we did not define the type of duty which would result in finding a confidential relationship and exclusion from the statutorily

defined class—public employees. We did, however, indicate our belief that the legislature intended to exclude those persons intimately associated with the public official or executive head of a bargaining unit. We now undertake to more precisely describe this association and the duties which *necessarily imply* that an employee stands in a confidential relation to the executive head of the bargaining unit or public official.

We begin by discussing the meaning of the phrase confidential relationship in the context of the Public Employees' Collective Bargaining Act. That phrase ordinarily means a fiduciary relationship. *Stevens v. Marco,* 147 Cal. App. 2d 357, 305 P.2d 669 (1956). This relationship arises when continuous trust is reposed by one person in the skills or integrity of another. An employee who stands in such a relation to an employer must act for the benefit of the employer. *Feider v. Hanna,* 172 Cal. App. 2d 201, 342 P.2d 344 (1959).

Those in whom such trust is continuously reposed could and perhaps would participate in the formulation of labor relations policy. They would be especially subject to a conflict of interest were they to negotiate with an employer on their own behalf. By excluding from the provisions of a collective bargaining act persons who work closely with the executive head of the bargaining unit, and who have, by virtue of a continuous trust relation, assisted in carrying out official duties, including formulation of labor relations policy, such conflict is avoided. And, public trust is protected since officials have the full loyalty and control of intimate associates. When the phrase confidential relationship is used in the collective bargaining act, we believe it is clear that the legislature was concerned with an employee's potential misuse of confidential employer labor relations policy and a conflict of interest.

This concern is clearly expressed in the Educational Employment Relations Act, RCW 41.59. Although not controlling here, it contains an instructive definition of the confidential employee. It reads:

(i) Any person who participates directly on behalf of an employer in the formulation of labor relations policy, the preparation for or conduct of collective bargaining, or the administration of collective bargaining agreements, except that the role of such person is not merely routine or clerical in nature but calls for the consistent exercise of independent judgment; and

(ii) Any person who assists and acts in a confidential capacity to such person.

RCW 41.59.020(4)(c)(i) and (ii).

Were we to significantly alter this definition in interpreting RCW 41.56.030(2), an anomalous result would occur. RCW 41.59 applies only to certificated personnel. RCW 41.59.020(4). And, noncertificated school district secretaries or administrative assistants are conceivably covered by RCW 41.56.030(2). Thus, unless RCW 41.56.030(2) is interpreted consistently with RCW 41.59.020(4)(c), noncertificated personnel who participate in formulation of labor relations policy would be granted the right to collectively bargain. By a consistent interpretation of the two statutes this result would be avoided. Indeed, this has been recent administrative practice. Public School Employees of Washington and Edmonds School District No. 15, Decision No. 231–PECB, May 24, 1977.

Finally, while dissimilarities between public and private employees led to Washington's failure to adopt Labor Management Relations Act standards, over the years the term confidential, when used with reference to employees, has become something of a term of art in the law which developed from that act. The meaning it has acquired in labor law, including public employment law, accords both with that given it by Washington's legislature in RCW 41.59.020(4)(c) and the interpretation we give to RCW 41.56.030(2). *See* 1 P–H Public Personnel Administration ¶ 28 (May 29, 1973), the definition of confidential employee in *Webster's Third New International Dictionary* (1968), and *In re Minneapolis–Moline Co.*, 85 N.L.R.B. 597 (1949).

We hold that in order for an employee to come within the exception of RCW 41.56.030(2), the duties which imply

the confidential relationship must flow from an official intimate fiduciary relationship with the executive head of the bargaining unit or public official. The nature of this close association must concern the official and policy responsibilities of the public officer or executive head of the bargaining unit, including formulation of labor relations policy. General supervisory responsibility is insufficient to place an employee within the exclusion.

Using this standard, we now examine the duties of the battalion chiefs involved in this case.

At the time this litigation began the City of Yakima had four battalion chiefs, one of whom functioned as a training officer. The battalion chiefs were located at headquarters station and were in charge of fire fighting activities within the city. The city then had four separate fire stations which responded to alarms. The stations were under the direction of a captain who reported to a battalion chief who in turn was answerable to the chief of the fire department.

The general responsibilities of battalion chiefs are varied. Official Fire Department Rules and Regulations, article 4, which was made part of the record in this case, sets forth those responsibilities.[2] Article 4 establishes that battalion chiefs function in more or less the capacity of deputy, a fact not disputed by the parties. There is, however, no clear indication in article 4 that battalion chiefs' official duties involve the formulation of labor relations policy. It merely states they "shall perform such other duties as the Chief may direct." (Article 4, section 19.)

Another document, prepared by the personnel director at the request of the city attorney for purposes of this litigation indicates battalion chiefs participate in monthly departmental reviews and analyze battalion needs. They

---

[2] "Article 4
"BATTALION CHIEF
"Section 1. The office of the Battalion Chief shall be at Headquarters of the Fire Department where he shall be in attendance when not otherwise engaged on business of the Fire Department as required by the Rules and Regulations or by order of the Chief.

also prepare an annual budget request for the chief presumably based on battalion needs.

---

"Section 2. He shall attend all fires of his battalion and shall be in command during the absence of his superior officer.

"Section 3. He shall have the authority and responsibility to have summoned or dispatched any equipment he deems necessary.

"Section 4. He shall be just, dignified and firm in his dealings with subordinates, and shall see that good order and proper discipline is maintained among the members.

"Section 5. He shall have authority to grant leaves of absence to members of his battalion in case of an emergency.

"Section 6. He shall have authority to summarily suspend from duty for cause, any subordinate officer or member, reporting such action in writing to the Chief immediately.

"Section 7. He shall hold the officers under his command responsible for the prompt and complete discharge of their duties, for the condition and actions of their companies in and out of quarters, and for any neglect in carrying out and enforcing all Rules and orders governing the officers and members of the Fire Department. Should he learn of any violation of orders or dereliction of duty on the part of any officer or member under his command, he shall report such findings, in writing, to the Chief.

"Section 8. He shall be responsible for all department property in his charge and shall see that it is in proper condition for immediate use at all times.

"Section 9. He shall make a complete and careful inspection of each station and the company records at least once each month.

"Section 10. He shall make a complete and careful inspection of each member's uniform and other clothing at least twice a year and shall report his findings to the Chief. He shall serve notice on members whose uniforms or parts thereof need replacing. He shall inspect and approve all new uniforms.

"Section 11. He shall report in writing to the Chief, prior to the expiration of an officer's or Firefighter's probation period who has been assigned to his battalion, whether or not such officer has served in a satisfactory manner.

"Section 12. He shall submit to the Chief such reports as may be required for the proper functioning of the Fire Department.

"Section 13. He shall cause all fire reports and reports of other activities and matters during his tour of duty to be placed on the desk of the Chief by 8:00 A. M.

"Section 14. He shall convey all orders of the Chief to the members and shall transmit all reports and communications of the officers and members to the Chief.

"Section 15. He shall cause the company officers under his supervision to properly train their men.

"Section 16. He shall cause the Water Department to be notified when large quantities of water from city hydrants is to be used or when hydrants have been used during freezing weather.

" . . .

■ Respondent suggests the exclusion from the definition of public employees should be construed broadly. RCW 41.56, however, is remedial in nature. Its provisions should be liberally construed to effect its purpose. *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972). Its purpose is implementation of the right of public employees to join and be represented by labor organizations. RCW 41.56.010. A broad construction of the exception from the covered class—public employees—does not effect this purpose. Further, in *Metro* we characterized those whose duties imply a confidential relationship as intimate associates. The import of this characterization is that the exception of RCW 41.56.030(2) should be limited.

We decline to exclude the battalion chiefs from the statutorily defined class of public employees on the basis of the record before us in this case. It contains nothing from which we can conclude that these battalion chiefs formulate departmental labor relations policy, and it contains neither facts nor circumstances which necessarily imply a confidential relationship. The nonspecific description of article 4, section 19, certainly does not necessitate an implication that a confidential relationship exists. And neither does addition of the preparation of a budget request warrant such an implication. If mere preparation and submission of a budget request at the direction of an executive justifies implication that an employee bears a confidential relationship to the executive, the statutory exception would be exceedingly broad since this activity is common among many public employees.

The battalion chiefs in this case are public employees within the meaning of RCW 41.56.030(2). Their duties arguably concern the official responsibilities of the executive head of the bargaining unit, but do not flow from a

---

"Section 18. He shall make certain that the fire alarm operator is advised of his whereabouts at all times.
"Section 19. He shall perform such other duties as the Chief may direct."

fiduciary relationship or involve formulation of labor relations policy. Accordingly, we reverse the trial court and reinstate the decision of the labor mediator.

WRIGHT, C.J., and ROSELLINI, BRACHTENBACH, and DOLLIVER, JJ., concur.

UTTER, J. (dissenting)—While I dissent with the conclusion reached by the majority, I concur in much of the discussion and reasoning used therein. I believe that the legislature intended to exclude from the provisions of the Public Employees' Collective Bargaining Act, RCW 41.56, those persons intimately associated with the public official or executive head of a bargaining unit. I also agree, as the majority states, that for an employee to come within the exception of RCW 41.56.030(2), the duties which imply the confidential relationship must flow from an official, intimate fiduciary relationship with the executive head of the bargaining unit or public official.

The Superior Court's findings of fact on the duties of the employees here involved are voluminous, but as I will note later, support its conclusions of law and judgment. The legislative intent regarding the meaning of "confidential relationship" is unclear. However, each company commander is a supervisor under the usual meaning of that term and is also a deputy or administrative assistant within the meaning of RCW 41.56.030(2). A battalion chief is in charge of five of these company commanders and is the alter ego of the executive head, the fire chief, for a shift. The battalion chiefs substitute for the head of the department in his absence for at least 168 hours per week. For 8,760 hours each year, battalion chiefs substitute for the fire chief.

The Superior Court found the battalion chief is responsible for the annual proficiency rating of captains under his command and shares in the proficiency rating of lieutenants under his command. He is responsible for maintaining good order and proper discipline, has authority to grant

leaves of absence to members of his battalion and to summarily suspend from duty for cause any subordinate officer or member. He also holds the officers under his command responsible for the complete discharge of their duties and makes regular reports on their performance. The Superior Court's conclusion that "battalion chiefs do bear a confidential relationship to the executive head of the bargaining unit, the fire chief" is supported by substantial evidence. The actions of these battalion chiefs can be reasonably construed to come within the boundaries of formulation of labor relations policy by their evaluative reports and functions in a confidential relationship with the fire chief. To conclude otherwise simply ignores the reality of how a line staff structure functions. As such, they are not public employees within the meaning of RCW 41.56.030(2) and the order of the trial court excluding the battalion chiefs from the bargaining unit should be sustained.

STAFFORD, HOROWITZ, and HICKS, JJ., concur with UTTER, J.