[No. 46148. En Banc. February 7, 1980.]

WASHINGTON STATE NURSES ASSOCIATION, *Respondent,* v. THE BOARD OF MEDICAL EXAMINERS OF THE STATE OF WASHINGTON, ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *John H. Keith, Assistant,* for appellants.

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for respondent.

*Daniel Brink* and *Mark A. Rossi* on behalf of Washington Academy of Physicians' Assistants, amici curiae.

BRACHTENBACH, J.—In 1971 the Washington legislature recognized by statute a new health care professional called the physician's assistant. Laws of 1971, 1st Ex. Sess., ch. 30, §§ 1–12 (codified in RCW 18.71A). The statute authorized the Board of Medical Examiners to adopt rules and regulations governing the extent to which physician's assistants may practice medicine. In 1977, to supplement previously adopted regulations, the Board adopted WAC 308–52–135,[1]

---

[1] "PHYSICIAN'S ASSISTANT PRESCRIPTIONS. A physician's assistant may issue written or oral prescriptions as provided herein when approved by the board and assigned by the supervising physician.

a new regulation which authorized physician's assistants to issue prescriptions for medication and write medical orders for patient care.

The Washington State Nurses Association challenged this regulation as exceeding the statutory authority of the Board of Medical Examiners. The trial court agreed with the Nurses Association and enjoined the Board of Medical Examiners from effectuating the regulation. We reverse.

Within hospitals, nurses are responsible for executing medical orders and administering prescribed medication. *See* RCW 18.88.030(5). By authorizing physician's assistants to issue prescriptions for medication and treatment, the regulatory scheme now requires nurses to execute prescriptions issued by physician's assistants as well as by physicians. The Nurses Association claims that this regulation alters the rules governing nursing activity, which can only be done by the State Board of Nursing under RCW 18.88.080. The Association also claims that the regulation requires nurses to execute directions given by nonphysicians, which would exceed the nurses' statutory authority

---

"(1) Except for schedule two controlled substances as listed under federal and state controlled substances acts, a physician's assistant may issue prescriptions for a patient who is under the care of the physician responsible for the supervision of the physician's assistant.

"(a) Written prescriptions shall be written on the blank of the supervising physician and shall include the name, address and telephone number of the physician. The prescription shall also bear the name and address of the patient and the date on which the prescription was written.

"(b) The physician's assistant shall sign such a prescription by signing his or her own name followed by the letters 'P.A.' and the registration number.

"(2) A physician's assistant employed or extended privileges by a hospital, nursing home or other health care institution may, if permissible under the by-laws, rules and regulations of the institution, write medical orders, except those for schedule two controlled substances, for inpatients under the care of the physician responsible for his supervision.

"(3) To be authorized to issue prescriptions for schedule three through five controlled substances, a physician's assistant must be registered with the board of pharmacy and the drug enforcement administration.

"(4) The registration of a physician's assistant who issues a prescription in violation of these provisions shall be subject to revocation or suspension." WAC 308–52–135, as amended September 7, 1979. WSR 79–10–041.

under RCW 18.88.030(5), .285, .290, exposing them to liability. The Board of Medical Examiners responds that the statutes and regulations place physician's assistants in the position of agents for their supervising physicians, rather than independent practitioners. Every order given by the assistant is therefore considered as coming from the supervising physician so that the regulation has not altered the nurses' position in any way. An examination of the statutes supports the view of the Board of Medical Examiners.

██ Two provisions in the statutes authorizing physician's assistants to practice medicine indicate a legislative intent to create an agency relationship. RCW 18.71A.020(2) states that "each physician's assistant shall practice medicine only under the supervision and control of a physician licensed in this state." RCW 18.71A.050 states that "any physician shall retain professional and personal responsibility for any act which constitutes the practice of medicine . . . when performed by a physician's assistant in his employ." These provisions for control and responsibility indicate that the actions of the assistant are to be considered as actions of the supervising physician.

The Nurses Association views the physician's assistant as another independently authorized health care practitioner much like nurses and physicians. Nurses, for example, are independently authorized to perform many different functions, and they are directly accountable to the patient for the quality of their services. RCW 18.88.010, .030, .285. In contrast, the use of physician's assistants is closely regulated under the statutes to assure that they exercise no independent authority. A physician who wishes to use a physician's assistant must seek approval from the Board, describing in detail the functions of the assistant and the training required. Approval is granted to the supervising physician for only 1 year at a time. RCW 18.71A.040. The applying physician undertakes to supervise and be responsible for the practice of the assistant. RCW 18.71A.020(2), .050.

A statute should be construed in light of the legislative purposes behind its enactment. *Hart v. Peoples Nat'l Bank,* 91 Wn.2d 197, 203, 588 P.2d 204 (1978). Some of those purposes can be found by examining the historical context in which a statute was passed to identify the problem that the statute was intended to solve. *Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 872, 602 P.2d 357 (1979). A purpose of the statutes which authorize the use of physician's assistants is to relieve the physician of routine and repetitive tasks, allowing the physician's specialized training and expertise to be used more efficiently. The assistant acts on behalf of the physician, allowing the physician to care for many more patients at one time and reducing the cost of health care. *See generally* Adamson, *Critical Issues in the Use of Physician Associates and Assistants,* 61 Am. J. of Pub. Health 1765 (1971); A. Sadler, Jr., B. Sadler, and A. Bliss, *The Physician's Assistant—Today and Tomorrow* (2d ed. 1975). The purpose of these statutes is not to increase the number or variety of primary decision makers in the health care system, but merely to increase the number of patients who can be treated by the most important decision makers, the physicians. To give effect to this purpose, the assistants must be considered as agents of the physicians rather than independent practitioners.

The construction placed upon a statute by the agency charged with its administration is entitled to considerable weight. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157 (1975). Other regulations concerning physician's assistants promulgated by the Board of Medical Examiners indicate that the Board considers physician's assistants to be agents of the physician under the statutes, rather than independent health care practitioners. Registration fees for utilizing an assistant must be paid by the physician rather than the assistant. WAC 308–52–130(7), (8). Physicians are usually limited to supervising only one assistant at a time. WAC 308–52–130(5)(a)(i). Procedural safeguards have been established to assure that the physician reviews and approves of the work

of the assistant. The supervising physician must review the assistant's work at least weekly and countersign the assistant's notes to assure that the physician has read them. WAC 308–52–130(6)(b)(i). In most cases, the assistant must not be geographically separated from the place where the physician meets patients. WAC 308–52–130(5)(b)(i).

■ The Nurses Association expressed concern that a nurse might be civilly or criminally liable for unauthorized practice of medicine for executing a prescription given by a physician's assistant which was subsequently disclaimed by the supervising physician as improper treatment. Statutes quoted above and the overall statutory scheme indicate that the supervising or employing physician cannot disclaim responsibility for any prescription issued by the assistant.

Other issues raised by the Nurses Association before the trial court have been resolved by subsequent statutory changes by the legislature and regulatory changes by the Board of Medical Examiners. Laws of 1979, 1st Ex. Sess., ch. 139; WSR 79–10–041.

The judgment of the trial court is reversed and the injunction is dissolved.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, HORO-WITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.