[No. 4027–5–III.   Division Three.   June 16, 1981.]

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL
1052, *Appellant,* v. PUBLIC EMPLOYMENT
RELATIONS COMMISSION, ET AL,
*Respondents.*

*Michael E. DeGrasse* and *Critchlow, Williams & Schu-*

*ster,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Assistant,* for respondent Public Employment Relations Commission.

*J. David Andrews,* for respondent City of Richland.

ROE, A.C.J.—The questions in this case are: (1) was it proper for the Public Employment Relations Commission (PERC) to accept jurisdiction of a unit clarification petition by the City of Richland, Washington (City), and (2) after having accepted jurisdiction, was the decision of PERC, which excluded battalion chief positions from the collective bargaining unit which also included rank–and–file fire fighters, either contrary to law, clearly erroneous, or arbitrary and capricious? Not involved in this case is a determination of whether the battalion chiefs are supervisory personnel or confidential employees who are ineligible for the benefits of the Public Employees' Collective Bargaining Act, RCW 41.56.010 *et seq.*

Since 1972, plaintiff/appellant Local 1052 (Union) had represented all members of the fire department in Richland, including the battalion chiefs, with the exception of the fire chief. In 1975, the Union and the City began negotiating a collective bargaining agreement, which would be in effect January 1, 1976, to December 31, 1977.

On May 20, 1975, the City, believing the battalion chiefs should not be included in the same local as the other fire fighters, petitioned PERC for unit clarification, seeking to exclude the battalion chief position from the bargaining unit. Neither party raised this issue during the negotiations and the new agreement, which included the battalion chiefs, was signed on August 5, 1975.

Later that year, the City again asked PERC to consider its previous petition to exclude battalion chiefs. At a hearing in 1977, the Union challenged the City's right to petition and requested the hearing officer not reach the merits. This request was refused. Then the Union representatives

walked out and refused to participate in a hearing on the merits relying on lack of jurisdiction of PERC. The hearing officer continued to take evidence on the function of the battalion chiefs. He later decided that PERC had jurisdiction to consider the petition and found the bargaining unit should be clarified by excluding the battalion chiefs. This decision was appealed to PERC, which affirmed the order. The Superior Court affirmed on appeal; this appeal followed.

Public employees have been given the right by statute, RCW 41.56.040, to organize for the purposes of collective bargaining. Public employees are defined in a rather restricted sense. RCW 41.56.030(2). They are those who are not elected by popular vote, or who are not appointed to office for a specified term, or whose duties do not necessarily imply a confidential relationship to the executive head of a public body. RCW 41.56.030(2).

PERC has been established to decide the appropriate bargaining unit when there is a disagreement between the public employer and employees regarding the selection of a bargaining representative. RCW 41.56.050. This process may be used in determining, modifying, or combining bargaining units; neither the statute nor the rule sets forth time limits for filing a petition for clarification of a unit. RCW 41.56.060; WAC 391-21-300.[1] In determining, modifying, or combining the bargaining unit, the commission "shall consider the duties, skills, and working conditions of the public employees", as well as the history and extent of collective bargaining and the desire of the public employees to be organized. RCW 41.56.060.

A unit clarification petition is a procedure for resolving ambiguities when there have been changes in the responsibilities of some members of a bargaining unit. *Union Elec. Co. v. Local 1455 Int'l Bhd. of Electrical Workers,* 217

[1]When this appeal was filed, the rule governing unit clarification petitions was WAC 296-132-151. This rule was superseded by WAC 391-21-300, effective February 1, 1978. Neither section sets forth time limitations for filing a petition.

NLRB Dec. 666, 667 (1975). Such petitions are authorized by our statute, RCW 41.56.060, and by rule, WAC 296–132–151:[2]

> Whenever a disagreement occurs on whether or not positions are to be included or excluded from the bargaining unit, the public employer or the bargaining representative may petition the department to conduct a representation hearing to resolve the matter.

PERC's authority to decide a unit appropriate for the purposes of collective bargaining is similar to that of the NLRB. *See* 29 U.S.C. § 159. A unit determination by the NLRB involves of necessity a large measure of informed discretion, *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 91 L. Ed. 1040, 67 S. Ct. 789 (1947), and must be upheld absent a clear abuse of this discretion. *Dynamic Mach. Co. v. NLRB,* 552 F.2d 1195, 46 A.L.R. Fed. 391 (7th Cir. 1977); *Stop & Shop Cos. v. NLRB,* 548 F.2d 17 (1st Cir. 1977); *Sheraton–Kauai Corp. v. NLRB,* 429 F.2d 1352 (9th Cir. 1970). Likewise, our Supreme Court has previously ruled that an administrative agency's appropriate unit finding must be upheld absent a clear abuse of discretion. *Association of Capitol Powerhouse Eng'rs v. State,* 89 Wn.2d 177, 183, 570 P.2d 1042, 95 A.L.R.3d 1090 (1977).

The Union argues that (1) since the employer petitioned for unit clarification prior to bargaining for a new contract with the fire fighters and the battalion chiefs, (2) since an agreement was reached in which the battalion chief position was expressly included in the bargaining unit, and (3) since the issue of clarification of the unit was not brought to that bargaining table by either the employer or the employees' union, PERC lacked jurisdiction to modify the new contract.

The Union relies upon *Safeway Stores, Inc. v. Brotherhood of Teamsters Local 70,* 216 NLRB Dec. 819, 819 (1975), in which the NLRB held, "[T]he Board will not normally entertain a petition for unit clarification during

---

[2]See footnote 1.

the term of a contract to modify a unit which is clearly defined in the current bargaining agreement." *Accord, Pacific Northwest Bell Tel. Co. v. Communications Workers,* 211 NLRB Dec. 1021 (1974). In addition, the Union argues that *Northwest Publications, Inc. v. San Jose Newspaper Guild,* 197 NLRB Dec. 213 (1972), involving an employer's unit clarification petition requesting certain supervisors be excluded from the established bargaining unit, controls. Previous negotiations covered the employees whom the employer later sought to exclude. The employer did not raise the issue of exclusion before the contract was executed.

■ The *Northwest Publications* principle and cases relied upon by the Union are not determinative because those cases dealt with unit clarification petitions filed during midterm negotiations over the existing contracts pursuant to a limited reopening clause. In the case at bench, the City had filed its petition for unit clarification at the time of the opening of negotiations for the 1976–77 contract. The hearing officer found:

> [T]he Union was put on notice by the City that the unit composition was being questioned and that the matter would be resolved by means of the Commission's processes. Since the subject of the unit makeup was not discussed at the bargaining table, although the red flag had been raised by the petition, I conclude that my consideration of the merits of the dispute would not be unduly disruptive to the parties' collective bargaining relationship.

Decisive of the question in this case is *WNYS–TV (WIXT) v. National Ass'n of Broadcast Employees,* 239 NLRB Dec. 170 (1978). There, the Union sought to clarify a bargaining unit to include additional personnel. The regional director refused to consider the petition because the Union had failed to insist upon inclusion of the disputed classification in the unit during the most recent contract negotiation. During the negotiations for the current contract the Union/petitioner proposed the classification be included in the unit, but the parties did not reach agree-

ment. Then the Union withdrew the proposal, as it did not wish to risk economic warfare or possible unfair labor practice charges over this question. It did, however, express its intent to pursue the matter through other channels in the future. The contract was signed March 17, 1978, after which the Union filed its unit clarification petition.

In reversing the director, the NLRB relied on *Massey–Ferguson, Inc. v. UAW,* 202 NLRB Dec. 193 (1973). There, the Union filed a clarification petition shortly after the contract was executed and after notice to the employer that it would do so. The Board found the clarification to include the disputed classification was proper, absent an indication the Union had abandoned its request in exchange for some concessions in the negotiations.

Here, as in *WNYS–TV* and *Massey–Ferguson,* there was no suggestion the City withdrew its petition for unit clarification as part of the bargaining process. PERC, therefore, appropriately considered the unit clarification petition.

Having decided PERC had jurisdiction to entertain the City's unit clarification petition, we must now decide whether the order entered by the hearing officer, and upheld by PERC and the Superior Court, was within PERC's authority. We find nothing in the PERC's order which is either clearly erroneous, arbitrary and capricious, or contrary to law, and therefore affirm its decision.[3]

Whether a battalion chief position should be included in the bargaining unit under state law has been hitherto

---

[3]In reviewing the decision of an administrative agency, a court may affirm or remand the case for further proceedings. It may also reverse the decision if the agency's findings, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

RCW 34.04.130(6).

A finding of an administrative agency is clearly erroneous

rather uncertain. Prior to 1970, the city battalion chief position was included in the bargaining unit. From 1970 to 1972, the battalion chief position was excluded from the bargaining unit by agreement. In 1972, after contested representation proceedings, the battalion chief position was reincluded. Thus, there has been a continuing disagreement between the City and the Union as to whether the battalion chiefs should continue to be in the bargaining unit.

After 1972, and after PERC's consideration of this petition, a substantial change was made in Washington public sector labor law. The precise relationship of battalion chiefs to the employer as viewed in this state has not been consistent and appears to be inconsistent with federal law. *See Minneapolis–Moline Co. v. UAW*, 85 NLRB Dec. 597 (1949). Supervisors are traditionally excluded under federal law from collective bargaining because of the confidential relationship which must necessarily exist between the employer and employee. The Washington statute specifically excludes from collective bargaining governmental employees whose duties as deputy, administrative assistant, or secretary necessarily imply a confidential relationship with the executive head, RCW 41.56.030(2). Thus, the legislature chose to exclude confidential employees from the act's coverage. It did not, however, specifically exclude supervisors. The Department of Labor and Industries (DLI), the predecessor to PERC, however, had excluded supervisors predicated on the maxim, "No man can serve

when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."
*Ancheta v. Daly*, 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). An action of an administrative agency is arbitrary and capricious when it is

willful and unreasoning . . ., without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.
*DuPont–Fort Lewis School Dist. 7 v. Bruno*, 79 Wn.2d 736, 739, 489 P.2d 171 (1971).

two masters." Tacoma, Dec. No. 95A–PECB (April 8, 1977).

In *Municipality of Metro Seattle v. Department of Labor & Indus.,* 88 Wn.2d 925, 568 P.2d 775 (1977), the Department of Labor and Industries had certified the appellant union as a bargaining representative for certain municipal employees. None of the positions involved carried the title of deputy, administrative assistant, or secretary. The court found unless the positions involved fell within one of those categories, the persons holding them were not excluded from the definition of public employee and hence would be able to collectively bargain. In addition, if the questioned employees did fit into one of the categories named, they still might be "public employees" if their duties did not necessarily imply a confidential relationship. In its definition of supervisor, the National Labor Relations Act manifests a concern with the authority which a supervisor exercises over other employees and a possible conflict of interest with management.

> The Public Employees' Collective Bargaining Act differs in that the concern which it displays is not with the relationship between the employee and other employees, but with the relationship between the employee and the head of the bargaining unit or other official described in the act.

*Municipality of Metro Seattle v. Department of Labor & Indus., supra* at 929. Thus, there can be a difference in the treatment of confidential employees and supervisors under the state act. In the above case the employees involved were at the lowest level of supervision. They had daily contact with the bus drivers, but no personal contact with the director. None of their duties implied or even suggested a confidential relationship existed between them and the head of the unit.

A case cited by both counsel and bearing some similarity is *International Ass'n of Firefighters Local 469 v. Yakima,* 91 Wn.2d 101, 587 P.2d 165 (1978), decided after the initial decision in this case. In 1969, the DLI, pursuant to the act, certified the Union as a bargaining agent for all City of

Yakima fire fighters except the chief. Later, the Union agreed with the City to exclude battalion chiefs from the bargaining unit. In 1973, the Union petitioned the DLI to restore battalion chiefs. An appointed mediator found the battalion chiefs should be included in the Union because they were public employees. On appeal, the director reversed the mediator, finding the evidence indicated the battalion chiefs did possess supervisory responsibilities, including some suspension authority. He also held this supervisory authority suggested the battalion chiefs were in a confidential relationship with the executive head of the bargaining unit and should be excluded from the statutory definition of public employee. After this decision was affirmed by the Superior Court, the Supreme Court reversed and stated:

> The central issue with which we are concerned is: Are the battalion chiefs public employees under RCW 41.56-.030(2)? If, by reason of their duties, they are not within the statutory definition of public employees, the director's exclusion of battalion chiefs from the definition of public employees and thus from coverage under the act was correct.

*International Ass'n of Firefighters Local 469 v. Yakima, supra* at 103.

The Supreme Court included the battalion chiefs within the statutorily defined class of public employees, as there was nothing in the record to suggest they formulated departmental labor relations policy which necessarily implied a confidential relationship. The decision was 5 to 4, with the dissenters holding the finding of the Superior Court that the battalion chiefs do bear a confidential relationship to the executive head of the bargaining unit (the fire chief) was supported by substantial evidence. To conclude otherwise would simply ignore the reality of how a line–staff structure functions; as such, the battalion chiefs would not be public employees within the meaning of RCW 41.56.030(2).

In *Firefighters* it was a very close question whether the

battalion chiefs should even have been permitted to become members of the Union. The question in the case at bench is not whether they should become members of the labor union, but whether they should be separated from the rank–and–file members of the Union because of the nature of their duties.

The PERC found the record of the hearing demonstrated the battalion chiefs in Richland have distinct duties, skills and working conditions which warrant their removal from the rank–and–file fire fighter unit.

Paraphrasing the hearing examiner's findings, the four battalion chiefs report directly to the fire chief, who reports directly to the city manager. One battalion chief is responsible for overseeing the training, prevention and inspection duties of the fire division. The other three battalion chiefs head one of the three shifts or platoons of fire fighters. Significantly, in the absence of the fire chief, the battalion chief on duty is the highest ranking officer. Each of the battalion chiefs shares an office adjoining the fire chief's office and has direct access to a secretary. Unlike the lower ranked fire fighters, each battalion chief is assigned to his own bedroom and has a city car. The chiefs wear white uniforms, the fire fighters, blue. The battalion chiefs, unlike other fire fighters, have a considerable amount of freedom to come and go as they see fit. They must attend monthly staff meetings with the fire chief at which the fire division's programs, operations or problems are discussed. Other fire fighters generally do not attend these meetings. Although the collective bargaining agreement has a provision relating to overtime, battalion chiefs do not receive overtime pay for attending staff meetings during their off–duty hours.

Battalion chiefs propose and discuss policy changes with the fire chief and occasionally draft new policy language. One is a budget officer. He must make day–to–day purchases. The battalion chiefs meet with the fire chief and determine the budget which is submitted to the city council. One of the battalion chiefs has authority to commit the credit of the City. The battalion chiefs can effectively rec-

ommend a fire fighter be disciplined or even discharged. They also can effectively recommend a person be hired, even though ultimate authority to hire or fire rests with the city manager. The battalion chiefs prepare employee evaluations and effectively recommend merit pay increases. They determine staffing and may transfer employees and determine and assign overtime. The battalion chief aids the fire chief in the preparation of promotional exams. Each of the battalion chiefs may resolve grievances pursuant to the first step of the grievance procedure described in the collective bargaining agreement. As a step in the grievance procedure, the battalion chief may be consulted by the fire chief or higher authorities.

The hearing examiner found the problems inherent in grouping supervisors and nonsupervisors in the same bargaining unit are evident in the instant case. The president of the Union Local is a battalion chief. As a supervisor, he owes a certain fiduciary duty to the City and, as president of the Local, a duty to the Union membership. The dilemma is apparent when an employee under his supervision files a grievance with him. In whose interest should he act? What pressure will he receive from either the City or the Union? Further, is it not more likely that grievances with regard to battalion chiefs' actions, including imposed discipline, would not be filed? How could the aggrieved employee then depend on the support of his union? Would not members of the battalion chief's platoon be hesitant to challenge his union leadership in view of the extent of his authority over them? Would there not be a stifling of discussion at union meetings when problems with supervision arose?

It is the traditional view of the rank and file that supervisors tend to a higher degree of allegiance to management than do the rank and file. This is recognized in the National Labor Relations Act, which excludes supervisors from collective bargaining. The hearing officer found the differences in function and working conditions indicate the battalion chiefs have a separate community of interest from

the rank–and–file fire fighters.

We must decide whether the findings of the hearing examiner as adopted by the PERC are clearly erroneous or arbitrary and capricious. In considering the above findings, and under the tests laid down in *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969), and *DuPont–Fort Lewis School Dist. 7 v. Bruno,* 79 Wn.2d 736, 489 P.2d 171 (1971), we find they are not. Nor do we find errors of law in the proceedings.

Accordingly, the judgment of the trial court is affirmed.

GREEN and MUNSON, JJ., concur.

Reconsideration denied July 2, 1981.

Review denied by Supreme Court September 25, 1981.