[Nos. 48438–4, 48578–0.   En Banc.   February 2, 1984.]

NUCLEONICS ALLIANCE, LOCAL UNION NO. 1–369, *Appellant,*
v. WASHINGTON PUBLIC POWER SUPPLY SYSTEM,
ET AL, *Respondents.*

WASHINGTON PUBLIC POWER SUPPLY SYSTEM, *Appellant,*
v. NUCLEONICS ALLIANCE, LOCAL UNION
NO. 1–369, ET AL, *Respondents.*

UTTER and DOLLIVER, JJ., dissent by separate opinion.

*Critchlow & Williams*, by *David E. Williams* and *Kenneth J. Pedersen*, for Nucleonics Alliance.

*Schweppe, Doolittle, Krug, Tausend & Beezer, P.S.*, by *Jerome L. Rubin* and *Robert J. Rohan*, for Washington Public Power Supply System.

*Kenneth O. Eikenberry, Attorney General*, and *Richard A. Heath, Senior Assistant*, for respondent Public Employment Relations Commission.

DORE, J.—This appeal involves consolidated cases. In the first, Nucleonics Alliance, Local 1-369, Oil, Chemical and Atomic Workers International Union, AFL-CIO (Nucleonics) appeals the trial court's grant of summary judgment

of dismissal in a declaratory judgment action in favor of Washington Public Power Supply System (WPPSS) and Public Employment Relations Commission (PERC). Nucleonics brought this action to determine whether PERC was legally required to process Nucleonics' representation petition pursuant to the Public Employees' Collective Bargaining Act, RCW 41.56.

In the second case, WPPSS appeals the trial court's dismissal of a declaratory judgment action it brought to prohibit Nucleonics from representing WPPSS security guards because it represents and is affiliated with unions which represent nonguard WPPSS employees.

In the first case, we hold that PERC has jurisdiction under RCW 41.56 over the labor relations between WPPSS and its employees and is required to process the election petition of such employees and reverse the trial court. In the second, we hold that Nucleonics can represent WPPSS guards even though such union is affiliated with a union which represents nonguard employees of WPPSS, and affirm the trial court.

## I

WPPSS is a joint operating agency established in 1957 under RCW 43.52. It is a municipal corporation. RCW 43.52.250. Its members are 19 public utility districts and four cities, Ellensburg, Richland, Seattle and Tacoma. It has authority to acquire, build, operate and own power plants and systems for the generation and transmission of electricity. RCW 43.52.300.

When this litigation was instituted, there were under construction five WPPSS nuclear power plants: three on the Hanford Nuclear Reservation and two near Satsop, Washington. At the present time, only nuclear plant 2 at Hanford continues under construction.

Nucleonics is a labor organization headquartered in Richland, Washington. Nucleonics is a member of the Central Labor Council and the Hanford Atomic Metal Trade Council and is affiliated with the AFL–CIO. All 4,727

employees working for contractors building nuclear plant 2 are members of unions also belonging to these councils and are affiliated with the AFL–CIO. The Central Labor Council and Hanford Atomic Metal Trade Council are mutual aid and protection union groups whose member unions support each other in strikes.

The security guards are presently independent and have no union affiliation.

In 1981, Nucleonics started an organization drive. In an effort to bring the benefits of collective bargaining to the security guards, Nucleonics petitioned PERC to supervise an election among the guards to determine if they desired to be represented by Nucleonics for collective bargaining purposes. PERC is an agency of the State of Washington entrusted by the Legislature with administering the Public Employees' Collective Bargaining Act, RCW 41.56.

WPPSS objected to the petition and PERC refused to process the same on the ground that it was foreclosed from doing so under the provisions of RCW 41.56.020, 54.04.170 and 54.04.180.

Nucleonics then brought the subject lawsuit in the Superior Court for Benton County seeking a declaratory judgment that PERC had the authority and obligation to process the petition. WPPSS, supported by PERC, moved for summary judgment of dismissal which was granted.

WPPSS subsequently brought a separate declaratory judgment action to prohibit Nucleonics from representing WPPSS security guards because it represents, and is affiliated with, unions which represent nonguard employees. The Benton County Superior Court entered a summary judgment of dismissal, holding that Nucleonics could represent WPPSS security guards, and that neither Washington law nor its public policy prohibit it.

## II

In the first case, we are asked to determine whether PERC has jurisdiction under RCW 41.56 over labor relations between WPPSS and its employees.

A history of this labor legislation is helpful in reaching our decision.

In 1967, the Legislature enacted the Public Employees' Collective Bargaining Act, RCW 41.56, declaring in RCW 41.56.010:

> The intent and purpose of this chapter is to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

The jurisdictional provision, RCW 41.56.020, provides:

> This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington except as otherwise provided by RCW 47.64.030, 47.64.040, 54.04.170, 54.04.180, 28.72.010 through 28.72.090, and chapter 53.18 RCW.

WPPSS and PERC successfully argued to the trial court that RCW 54.04.170 and 54.04.180 exempted WPPSS and its employees from RCW 41.56. RCW 54.04.170 provides:

> Employees of *public utility districts* are hereby authorized and entitled to enter into collective bargaining relations with their employers with all the rights and privileges incident thereto as are accorded to similar employees in private industry.

(Italics ours.)

RCW 54.04.180 provides:

> Any *public utility district* may enter into collective bargaining relations with its employees in the same manner that a private employer might do and may agree to be bound by the result of such collective bargaining.

(Italics ours.)

These provisions expressly apply to public utility districts and their employees. Consequently, the resolution of this issue turns upon whether WPPSS is a "public utility district" (PUD) for the purposes of a statutory exception from RCW 41.56.

■■ Since the question is one of statutory interpretation, we approach it with the applicable rules of statutory construction in mind. The basic rule is that a statute should be construed in light of the legislative purpose behind its enactment. *Washington State Nurses Ass'n v. Board of Med. Examiners,* 93 Wn.2d 117, 121, 605 P.2d 1269 (1980). The declared purpose of RCW 41.56 is implementation of the right of public employees to join and be represented by labor organizations. *International Ass'n of Firefighters Local 469 v. Yakima,* 91 Wn.2d 101, 109, 587 P.2d 165 (1978). RCW 41.56, being remedial in nature, is entitled to a liberal construction to effect its purpose. *Firefighters,* at 109; *Roza Irrig. Dist. v. State,* 80 Wn.2d 633, 639, 497 P.2d 166 (1972).

A policy requiring liberal construction is a command that the coverage of an act's provisions be liberally construed and that its exceptions be narrowly confined. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 138, 580 P.2d 246 (1978); *Mead Sch. Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 140, 145, 530 P.2d 302 (1975).

■ The statutory scheme establishes that this chapter shall apply to any municipal corporation of the state unless it falls within specific exceptions. Whether or not it does is a function reserved for the judiciary. The court is the proper body to determine the construction and interpretation of statutes. Thus, even when the court's interpretation is contrary to that of an agency charged with carrying out the law, it is ultimately for the courts to declare the law and the effect of the statute. *Hearst,* at 130.

■ A broad construction of the exception, RCW 54.04-.170 and RCW 54.04.180, from the covered class of municipal corporations would not effect the purpose of providing the right of public employees to join and be represented by labor organizations. *See Firefighters,* at 109.

Among the provisions conferring powers and duties upon a joint operating agency, RCW 43.52.391 provides in part:

Except as otherwise provided in this section, a joint operating agency shall have all powers now or hereafter

granted public utility districts under the laws of this state.

Although WPPSS has been granted some of the same powers and duties that are applicable to PUD's, it does not mandate that WPPSS be considered a PUD for the purposes of an exception from RCW 41.56.

In contrast with the powers granted to PUD's by RCW 54.16, under RCW 43.52.391 a joint operating agency has a number of restrictions. Among other things it

shall *not* acquire nor operate any electric distribution properties nor condemn any properties owned by a public utility which are operated for the generation and transmission of electric power and energy . . . nor levy taxes, issue general obligation bonds, or create subdistricts.

(Italics ours.)

A PUD *is* empowered to operate electric distribution lines (RCW 54.16.040), condemn properties owned by a public utility (RCW 54.16.020), levy taxes (RCW 54.16.080) and issue general obligation bonds (RCW 54.16.070).

WPPSS was not established pursuant to the public utility districts act, RCW Title 54, but was established as a joint operating agency under RCW 43.52 as a municipal corporation. The formation of a joint operating agency may consist of any two or more cities or PUD's or combinations thereof. The membership of WPPSS includes four cities as well as numerous PUD's. Whereas the separate PUD's are subject to the exception of RCW 41.56.020, municipalities which have an express grant of authority almost identical to that of the PUD's to construct, acquire and operate electric generating facilities, are not subject to such exceptions from RCW 41.56. *See Chemical Bank v. Washington Pub. Power Supply Sys.*, 99 Wn.2d 772, 776, 784, 666 P.2d 329 (1983).

In *Chemical Bank,* this court noted that there exist critical distinctions between WPPSS and PUD's.

Another possible independent source of express power is the joint operating statutes under which WPPSS was created. RCW 43.52. As quoted previously, these provi-

sions clearly authorize the participants to purchase "electric energy." RCW 43.52.410. By comparison, a joint operating agency is authorized to contract with any municipal corporation or public utility "for any term relating to the purchase, sale, interchange or wheeling of power". RCW 43.52.391. *This difference in language indicates a critical distinction between the grants of authority to the participants and to WPPSS, because the city's and PUD's authority is significantly more limited.*

(Italics ours.) *Chemical Bank*, at 794.

In short, the powers accorded statutorily to a "joint operating agency," such as WPPSS, are not the same as the powers bestowed on a PUD.

In accordance with the rules of statutory construction and the remedial nature of the Public Employees' Collective Bargaining Act, we find WPPSS not to be a public utility district and, therefore, not within the jurisdictional exception of RCW 41.56.020.

### III

In the second case, we are asked to determine, absent an employer's voluntary consent, whether a union can be certified as the representative of employees in a bargaining unit of guards if the union represents, or is affiliated with, a union which represents employees other than guards.

The declared purpose of RCW 41.56 is the implementation of the right of public employees to join labor organizations of *their own choosing* and to be *represented* by such organizations in matters concerning their employment relations with public employers.

This law recognizes the right of public employees to organize and designate representatives of their own choosing for the purpose of collective bargaining by prohibiting interference with such rights and designating such interference an unfair labor practice. RCW 41.56.040, 41.56.140(1), (2).

PERC was established to decide the appropriate bargaining unit when there is a disagreement between the

public employer and employees regarding the selection of a bargaining representative. RCW 41.56.050. This process may be used in determining, modifying, or combining bargaining units. In determining, modifying, or combining the bargaining unit, PERC "shall consider the duties, skills, and working conditions of the public employees" as well as the history and extent of collective bargaining and the desire of the public employees to be organized. RCW 41.56.060; *International Ass'n of Fire Fighters Local 1052 v. Public Empl. Relations Comm'n*, 29 Wn. App. 599, 601, 630 P.2d 470, *review denied*, 96 Wn.2d 1004 (1981). Concerning determination of the bargaining representative, RCW 41.56.060 provides in part:

> The commission shall determine the bargaining representative by (1) examination of organization membership rolls, (2) comparison of signatures on organization bargaining authorization cards, or (3) by conducting an election specifically therefor.

Provisions for election are set forth in RCW 41.56.070, and the bargaining representative which has been determined to represent a majority of the employees in a bargaining unit shall be certified by PERC as the exclusive bargaining representative. RCW 41.56.080.

PERC is also given authority to promulgate, revise, or rescind rules and regulations necessary or appropriate to administer the Public Employees' Collective Bargaining Act in conformity with its intent and purpose and consistent with the best standards of labor–management relations. RCW 41.56.090.

This court has ruled that decisions construing the National Labor Relations Act (NLRA), while not controlling, are persuasive in interpreting state labor acts which are similar or based upon the NLRA.

> Washington's Public Employees' Collective Bargaining Act, RCW 41.56, is substantially similar to the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169 (1976), (Act of July 5, 1935, Pub. L. No. 74–198, 49 Stat. 449, as amended). For example, *compare* RCW 41.56-.030(4) *with* 29 U.S.C. § 158(d). *See generally* McClin-

tock, Crump & Tuffley, *Washington's New Public Records Disclosure Act: Freedom of Information in Municipal Labor Law*, 11 Gonz. L. Rev. 13, 60–67 (1975). In construing state labor acts which appear to be based upon or are similar to the NLRA, decisions under that act, while not controlling, are persuasive. *See Spokane Educ. Ass'n v. Barnes*, 83 Wn.2d 366, 375, 517 P.2d 1362 (1974); *In re Case E-368*, 65 Wn.2d 22, 28, 395 P.2d 503 (1964).

*State ex rel. Wash. Fed'n of State Employees v. Board of Trustees*, 93 Wn.2d 60, 67–68, 605 P.2d 1252 (1980).

The provisions of certification contained in RCW 41.56 are similar to the NLRA § 9, 29 U.S.C. § 159 (1976). However, there exists one major distinction. Section 159(b)(3) provides:

The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided*, That the Board shall not . . . (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; *but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.*

(Italics ours.) This provision is conspicuously absent from RCW 41.56.

In *Tacoma Smelter, Am. Smelting & Ref. Co. v. Smeltermen's Local 25, Int'l Union of Mine & Mill & Smelter Workers*, 45 Wn.2d 274, 273 P.2d 895 (1954), this court recognized that the prohibition of 29 U.S.C. § 159(b)(3) is a substantive provision of law which must be read into every union bargaining agreement certified under the NLRA.

While interpretation of the NLRA may be used to

assist in interpreting the Public Employees' Collective Bargaining Act, a provision of the federal statute cannot be engrafted onto the state statute where the Legislature saw fit not to include such provision.

As noted in *Green River Comm'ty College v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 120, 622 P.2d 826 (1980), *modified,* 95 Wn.2d 962, 633 P.2d 1324 (1981), the NLRA regulates labor relations only in the private sector. Private sector bargaining and public sector bargaining are radically different. This is particularly pertinent in the present context.

In 1973, the Public Employees' Collective Bargaining Act was amended in part by the addition of provisions for mandatory mediation, factfinding and binding arbitration for "uniformed personnel". RCW 41.56.030(6), .430–.490 and .910; *Yakima Cy. Deputy Sheriffs Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 833, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980). "Uniformed personnel" are defined by RCW 41.56.030(6) as "law enforcement officers . . . of cities with a population of fifteen thousand or more or law enforcement officers employed by the governing body of AA counties". WPPSS security guards are not within such coverage.

Concerning the wisdom of the "uniformed personnel" provisions, this court held that the Legislature in its discretion may experiment with a solution to public sector labor relations problems and strike at the harm only where it thinks it is most acute. *Yakima County,* at 839.

While we are in agreement that a strong policy exists in favor of eliminating a danger of guards having conflicting obligations to their union and to their employer, our Legislature has not seen fit to address this situation and it is not our prerogative to provide a legislative solution.

We conclude that absent state legislation to the contrary, a union can be certified by PERC as the representative of public employees in a bargaining unit of guards although the union represents or is affiliated with a union which represents employees other than guards.

CONCLUSION

In Nucleonics Alliance v. WPPSS, et al, we reverse the trial court's summary judgment of dismissal holding that WPPSS and its employees were excepted from operation of RCW 41.56.

In WPPSS v. Nucleonics Alliance, et al, we affirm the summary judgment of dismissal which upheld the right of Nucleonics to represent WPPSS security guards.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, DIMMICK, and PEARSON, JJ., concur.

UTTER, J. (dissenting)—RCW 43.52.391 mandates that "[e]xcept as otherwise provided in this section, a joint operating agency shall have all powers now or hereafter granted public utility districts under the laws of this state." This broad statement of legislative intent implies that joint operating agencies such as WPPSS, which consists of 19 PUD's and 4 municipal corporations, should be treated as PUD's for labor law purposes. Nothing in *Chemical Bank v. Washington Pub. Power Supply Sys.*, 99 Wn.2d 772, 666 P.2d 329 (1983) implies a contrary rule.

The majority assumes that if WPPSS is treated as a PUD for labor law purposes, PERC is without jurisdiction. I disagree. RCW 41.56.020 provides that RCW 41.56 shall apply to any municipal corporation "except as otherwise provided by RCW . . . 54.04.170, 54.04.180 . . ." Although RCW 54.04.170 and RCW 54.04.180 provide that PUD's shall be treated as private employers with respect to the collective bargaining rights and privileges of PUD employees and the manner of collective bargaining relations, they do not generally exempt PUD's from the other provisions of RCW 41.56. One such provision grants PERC jurisdiction.

PERC jurisdiction is essential for enforcement of the labor laws, since neither the NLRB nor any other agency has jurisdiction over PUD's. While some labor law provisions are enforceable, others are essentially administrative tasks, such as supervising union elections and selecting

bargaining units. Some administrative agency must have discretion to administer the applicable law.

RCW 54.04.170 and RCW 54.04.180 are intended to incorporate most of the protections of the NLRA. RCW 54.04.170 gives PUD's and employees "all the rights and privileges incident [to collective bargaining]" which employees in private industry have. RCW 54.04.180 gives PUD's collective bargaining powers "in the same manner that a private employer might do". For private employers, these rights and powers are defined by the NLRA. Therefore, our state statutes were intended to apply the same NLRA rules to PUD's in order to put PUD's on an equal footing with private employers.

Section 159(b)(3) of the NLRA, which prohibits the inclusion of guards and nonguards in the same bargaining unit, would seem to be a limit on the "manner" in which private employer collective bargaining relations may be framed.

I believe the PERC has jurisdiction but only because it should have jurisdiction over PUD's in general, not because WPPSS is not a PUD. RCW 54.04.170 and RCW 54.04.180 apply the provisions of the NLRA to PUD's so that guards and nonguards cannot be put in the same bargaining unit.

DOLLIVER, J., concurs with UTTER, J.